UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. Ramon Maldonado, <br><br> Plaintiffs, <br><br> V. <br><br> BALL HOMES, LLC, et al., <br><br> Defendants. | Civil Action No. 5: 17-379-DCR <br><br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Relator Ramon Maldonado filed a *qui tam* action under the False Claims Act against Defendants Ball Homes, LLC, ("Ball Homes"), Walden Mortgage Group, LLC, ("Walden"), American Mortgage Service Company, ("American Mortgage") and John Does 1-10, on September 19, 2017. [Record No. 1] Maldonado alleges that the defendants took part in a fraudulent scheme which involved submitting falsified documents to obtain loans insured by the Federal Housing Administration ("FHA").

The United States filed a notice of its election to decline intervention on February 15, 2018. [Record No. 8] The Complaint was unsealed and the Relator was permitted to serve the Complaint upon the defendants. After Maldonado served the defendants, the United States and the defendants filed separate motions to dismiss. [Record Nos. 23, 20, 26]. The Court scheduled the matter for oral argument and Maldonado subsequently moved for an evidentiary hearing. [Record No. 38] The Court heard the parties' arguments on June 29, 2018.

For the reasons that follow, Maldonado's motion for an evidentiary hearing will be denied, the United States' motion to dismiss will be granted, and the defendants' motions to dismiss will be denied, as moot.

## I.

The United States Department of Housing and Urban Development ("HUD") administers a home-loan program through the FHA. Under this program, the FHA insures mortgage loans made by private lenders that have been approved by the FHA.[1] [Record No. 1, ¶ 10] If a homeowner defaults on his FHA-insured loan and the lender forecloses, HUD pays the lender the balance of the loan and assumes ownership and possession of the property. *Id.* at ¶ 11. The program requires the lender to make a determination that the property and borrower are eligible for mortgage insurance according to HUD's requirements. *Id.* ¶ 18.

HUD Form 92541, "Builder's Certification of Plans, Specifications, & Site" is at issue in this case. It includes various questions pertaining to whether the property in question meets minimum standards required for FHA insurability. *See* 24 C.F.R. § 200.926. This form is submitted to the lender, as well as an appraiser, and must be completed before a borrower may be approved for an FHA loan. [Record No. 1, ¶ 22]

Maldonado alleges that he purchased a new-construction home from Defendant Ball Homes in March 2013. The home is located at 4736 Foxglove Point in Lexington, Kentucky, and is part of the "Chilesburg development." [Record No. 1, ¶ 44] The contract between

---

[1] FHA-approved lenders are mortgagees who have been granted "Direct Endorsement" status to obtain mortgage insurance endorsements from HUD without HUD's prior review or approval. *Id.* at ¶ 14. FHA-approved lenders with Direct Endorsement authority may also sponsor "Third-Party Originators," which are permitted to originate mortgages on behalf of the FHA-approved lender. *Id.* at ¶ 16.

Maldonado and Ball Homes made the purchase contingent upon Maldonado obtaining an FHA-insured loan. *Id.* at ¶ 47. Maldonado alleges that Ball Homes' closing agent, Kay Conley, completed HUD Form 92541 (the "Form"), and certified that that the home met the requirements of "24 C.F.R. 200.936(d)." *Id.* at ¶ 51.

Maldonado contends that portions of the certification were false, including part 1(f), which certified that the home site "did not have any earth fill." *Id.* at ¶ 52. Maldonado also claims that Conley falsely certified that she had personally reviewed the "plans, specifications, and site information," when, in fact, she lacked the personal information necessary to complete the Form. *Id.* at ¶ 54.

Maldonado alleges that Ball Homes submitted the falsified Form to Walden, a third-party originator for FHA loans, knowing that Walden would submit the Form to a loan underwriter to secure an FHA loan. *Id.* at ¶ 57-58. Indeed, American Mortgage underwrote the loan and, according to Maldonado, collected underwriting fees, as well as principal and interest payments.[2] *Id.* at ¶ 60. He further contends that Walden collected a closing fee in excess of $4,000.00, with knowledge of the falsified Form. Maldonado claims that, "on information and belief," Walden had knowledge of falsified HUD 92541 forms for other homes in the Chilesburg development. *Id.* at ¶ 63.

Maldonado contends that numerous people acted in reliance on the allegedly falsified Form. First, he claims that *he* was forced to rely on the false builder's certification to be able purchase the home. *Id.* at ¶ 63. He further contends that the FHA appraiser relied on the Form

---

[2] Maldonado has named other defendants, in addition to American Mortgage, that he claims are "principals for Walden Mortgage." He claims that these defendants are "unknown to the Relator as of yet" and he has named them John Does numbers 1 through 10. [Record No. 1, ¶ 30]

to complete the required appraisal of the home. *Id.* at ¶ 65. Finally, he alleges that the FHA relied on the falsified Form, submitted by Walden, on behalf of American Mortgage, when it approved the home for FHA mortgage insurance. *Id.* at ¶ 66.

Maldonado claims that his home is defective for a variety of reasons, including "settling soils, water problems, and other construction related issues." *Id.* at ¶ 67. He alleges that, "based on information and belief," Ball Homes and Walden have utilized "this same scheme" to obtain FHA-insured loans throughout Lexington, Kentucky, and perhaps in other states. *Id.* at ¶ 68. He contends that the FHA has paid approximately $11,715,000.00 based on 132 home foreclosures for new construction homes built by Ball Homes and believed to be financed through Walden Mortgage. *Id.* at ¶ 69.

Maldonado alleges that Ball Homes and Walden violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, by knowingly submitting falsified 92541 forms for FHA insurance.[3] He further claims that American Mortgage and John Does 1 through 10 violated the FCA by failing to properly monitor Walden, "as required by the HUD Single Family Handbook." *Id.* at ¶¶ 107, 109. Maldonado voluntarily dismisses Count 5 ("Violation 18 U.S.C. §§ 1001, 1010, 1012; 31 U.S.C. §§ 3729, 3802 as provided on HUD Form 92541") and Count 6 ("Violation of Executive Order 11988 and HUD Environmental Regulations (24 C.F.R. Part 51)") of the Complaint.

---

[3] Maldonado sued Ball Homes in Fayette Circuit Court in 2014, alleging fraud arising out of the construction of his home. That case is currently pending for consideration of Maldonado's motion for leave to file a Third Amended Complaint.

## II.

The False Claims Act forbids presenting false or fraudulent claims, or using false statements that are material to false or fraudulent claims, that are submitted to the federal government for payment. 31 U.S.C. § 3729(a)(1)(A), (B). The FCA permits a person to bring a civil action for a violation of § 3729(a)(1) for the person and for the United States government. 31 U.S.C. § 3730(b)(1). If the government declines to intervene in the action (as it did in this case), the person bringing the action has the right to conduct it. *Id.* § 3730(b)(4). However, the government still has the authority to make certain decisions, which include dismissing the case over the relator's objection. *Id.* § 3730(c)(2)(A).

The courts have developed two differing standards for evaluating government requests to dismiss *qui tam* actions. *Compare United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998) (holding that the government must identify a valid government purpose that is rationally related to dismissal) *with Swift v. United States*, 318 F.3d 250, 252 (D.C. Cir. 2003) (holding that the government has an "unfettered right" to dismiss a *qui tam* action); *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 64-65 (D.C. Cir. 2008) (government has "virtually unfettered discretion" to dismiss). Neither the United States Supreme Court nor the Sixth Circuit has stated its position on this issue, but this Court previously agreed with the D.C. Circuit that the government has virtually unfettered discretion to dismiss a *qui tam* action. *United States ex rel. Levine v. Avnet, Inc.*, No. 2: 14-CV-17-WOB, 2015 WL 1499519, *4 (E.D. Ky. Apr. 1, 2015).

The standard another judge of this Court previously adopted is in keeping with the plain language of 31 U.S.C. § 3730(c)(2)(A), which provides that:

> [t]he Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.

*See also Heckler v. Chaney*, 470 U.S. 821, 831-33 (1985) (Executive exercises control of whether to pursue litigation for the United States).

Maldonado urges the Court to deviate from the previous unpublished decision in *Levine* and apply the more stringent test announced in *Sequoia Orange*.[4] While the *Sequoia Orange* Court construed the hearing requirement as authorizing judicial review of the government's motion to dismiss, 151 F.3d at 1145, the *Swift* Court had the better view that the hearing simply gives the relator "a formal opportunity to convince the government not to end the case." *Swift*, 318 F.3d at 253. As explained in *Levine*, the plain language of the statute says nothing about the government being required to make any sort of showing in support of its motion to dismiss. 2015 WL 1499519, at *4.

But even if the Court applied the more searching standard announced in *Sequoia*, the government has established that its motion to dismiss should be granted. Despite its decision to decline intervention, the United States remains the real party in interest. *See Searcy v. Philips Elecs. N.A. Corp.*, 117 F.3d 154, 156 (5th Cir. 1997). Although Maldonado insists that the United States would not be required to invest any of its resources, the government has an obvious interest in monitoring an action brought in its name. *See id.* at 159 (government is encouraged to "monitor relators' actions and step in when a relator is not acting in the best interest of the public").

---

[4] This Court previously concluded that intervention is not required for the government to dismiss pursuant to § 3730(c)(2)(A). *Levine*, 2015 WL 1499519, at *3-4. Maldonado does not appear to argue otherwise.

As the United States pointed out during oral argument, government participation necessarily is required to prove violations of the FCA. Aside from participating in discovery, the United States would be required to monitor pleadings and participate in any mediation or settlement negotiations. It is clearly unreasonable to suggest that the government should sit by idly while Maldonado prosecutes an action in the United States' interest.

The Court is also mindful that the government has a valid interest in reining in weak *qui tam* actions. The United States reports that it has performed an independent investigation and also has reviewed discovery material from Maldonado's state court action against Ball Homes. The attorney for Ball Homes also describes the government's extensive investigation that took place over a significant period of time. [Record No. 41, pp. 4-5] After evaluating Maldonado's claims, the government concludes that he "overstates the significance of the alleged false statements and fails to tie the false statements to false claims made to the United States." [Record No. 23-1, p. 13]

The Complaint suggests that the FHA would not have insured loans for homes constructed on sites with earth fill. However, HUD Form 92541 permits homebuilders to use earth fill; it simply requires them to supply additional information before a lender makes a determination on FHA insurance. Accordingly, as the United States notes, Maldonado has failed to make a strong connection between the allegedly false statements and FHA's willingness to insure the loans.

Further, the Sixth Circuit has determined that particularized allegations of a false claim submitted for payment to the federal government—as opposed to a mere false scheme—are required to advance beyond the pleading stage. *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (*Bledsoe II*) (citing *Yuhasz v. Brush*

*Wellman, Inc.*, 341 F.3d 559, 562-63 (6th Cir. 2003)). Maldonado does not claim that he defaulted on his FHA loan, requiring the federal government make a payment based on the defendants' submission of a false claim or statement. In fact, he has not identified with specificity a single false claim for payment. Maldonado "believe[s] that the FHA has paid nearly 12 million dollars based on the defendants' alleged conduct. [Record No. 1, §§ 68-69] However, allegations of fraud based on "information and belief," must "set forth a factual basis for such belief." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006). Maldonado has provided no such basis here.

Finally, the Court concludes that Maldonado is not entitled to an evidentiary hearing. Although § 3730(c)(2)(A) entitles him to "a hearing" on the government's motion to dismiss, if he requests one, there is no requirement that he be permitted to introduce evidence. This Court has concluded that the government has virtually unfettered discretion to dismiss a False Claims Act case, save exceptional circumstances, such as a showing of fraud on the Court. *United States ex rel. Levine v. Avnet, Inc.*, No. 2: 14-CV-17, 2015 WL 1499519 (E.D. Ky. Apr. 1, 2015) (citing *Swift v. United States*, 318 F.3d 250 (D.C. Cir. 2003)). It follows that exceptional circumstances are the only ones that would warrant conducting an evidentiary hearing. Even the Ninth Circuit (which applies the less deferential "rational relation" standard to the government's motion to dismiss) has recognized, "[i]t is not clear whether in practice this notice and hearing requirement has amounted to much of a hurdle for the government." *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1144 (9th Cir. 1998) (quoting *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 753 n.11 (9th Cir. 1993)).

Contrary to Maldonado's motion, he has not identified "existing evidence" that the United States has unreasonably failed to consider in electing to dismiss this action. Instead, he seeks to conduct a mini-trial on the merits, calling numerous witnesses, to *develop* evidence for the government to consider. The United States (and the defendants' attorneys) have described the government's investigatory efforts and Assistant United States Attorney reports having met with Maldonado several times. Additionally, he was afforded a hearing during which he argued in open court against the government's motion for dismissal. This is all that is required under 31 U.S.C. § 3730(c)(2)(A).

Finally, Maldonado requests leave to amend his Complaint to "clarify his allegations." [Record No. 25, pp. 1, 21] Ordinarily, plaintiffs are given "at least one chance to amend the complaint" before it is dismissed with prejudice. *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003) (*Bledsoe I*); *United States ex rel. Armes v. Garman*, 719 F. App'x 459, 465 (6th Cir. 2017). However, Maldonado has failed to state the nature of his proposed amendments. Further, his written disclosure statement and an affidavit from his attorney suggest that he is aware of no facts that could save his Complaint from dismissal. [*See* Record Nos. 25-1; 28-3, pp. 12-15.]

### III.

Based on the foregoing, it is hereby

**ORDERED** as follows:

1. The United States' Motion to Dismiss [Record No. 23] is **GRANTED**. The Complaint is **DISMISSED**, with prejudice, to Relator Ramon Maldonado, and without prejudice to the United States.

2. Relator Ramon Maldonado's Motion for an Evidentiary Hearing [Record No. 38] is **DENIED**.

3. Defendants Ball Homes, LLC and Walden Mortgage Group, LLC's Motion to Dismiss [Record No. 20] is **DENIED**, as moot.

4. Defendant American Mortgage Service Company's Motion to Dismiss [Record No. 26] is **DENIED**, as moot.

5. This matter is **STRICKEN** from the Court's docket.

This 29th day of June, 2018.

Signed By:
*Danny C. Reeves* DCR
United States District Judge